IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 18, 2017 Session

## OLA HALIM v. TAREK G. EL-ALAYLI

**Appeal from the Circuit Court for Williamson County**
**No. 08431     Deanna B. Johnson, Judge**

_____

### No. M2016-00500-COA-R3-CV

_____

This is a post-divorce child support modification case. Ola Halim filed a petition against her former husband, Tarek G. El-Alayli, seeking an increase in child support based upon a material change in circumstances. The parties' final divorce decree had incorporated a permanent parenting plan setting child support at $3,000 per month. The day before the hearing on the petition, mother filed a request for relief seeking an upward deviation in child support for the specific needs of one of the children; a special needs trust for that child; and an educational trust for another one of the parties' children. Following the hearing, the trial court entered an order setting monthly child support at $4,009 and denying mother's other requests. Mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

J. Timothy Street, Franklin, Tennessee, for the appellant, Ola Halim.

Cathy Speers Johnson, Franklin, Tennessee, for the appellee, Tarek G. El-Alayli.

### OPINION

#### I.

#### A.

Mother and father are the parents of three children, Sammy, Maggie, and Dina.

Sammy and Maggie have both reached majority. Maggie suffers from severe autism. Mother and father were appointed co-conservators of Maggie by the Williamson County Chancery Court. The conservatorship order provides the following:

> [Mother] shall have the sole authority to make decisions regarding the educational planning, the type and quantity of intervention Maggie shall receive, the services she receives from any applicable agency and/or provider, daily care outside of the home and her day to day programming. . . . [Mother] shall make these planning and programming decisions based solely on Maggie's needs and what is in her best interest. [Mother] shall act reasonably and prudently in this regard and this authority is not intended to have the effect of dictating the financial or support obligations to be provided by [father] . . . .

In the original divorce litigation in the trial court, the parties agreed on a permanent parenting plan that designated mother as the primary residential parent. The plan called for father to pay monthly child support of $3,000. The $3,000 figure included basic child support of $2,191 and an upward deviation of $809 due to the special needs of Maggie. On August 3, 2010, the trial court entered a final divorce decree incorporating the parties' plan.

On April 11, 2014, mother filed a document entitled "petition to set child support." In her petition, she asked the court to set an appropriate amount of child support based upon "the material change in circumstance resulting from the increase in father's income, the emancipation of one of their children, and the special needs of their severely disabled child . . . ." The day before the hearing on the petition, mother filed a document titled "notice of request of relief sought." In this pleading, she requested the following monthly amounts: (1) $2,100 in child support for Dina; (2) $150 for Dina's cheerleading expenses; (3) $1,533 in special education for Maggie; (4) $350 as an allowance for spending money for Maggie; (5) $30 for a camp for Maggie to attend; (6) $330 for food for Maggie; (7) $185 representing one third of the utilities for Maggie; (8) $250 for vacation for Maggie; and (9) $714 representing one third of the mortgage for housing for Maggie. These requests total $5,642 per month. Additionally, mother requested that father be obligated to pay $2,000 per month into an educational trust for Dina and $2,000 per month into a special needs trust for Maggie. In total, mother requested $9,642 per month.

**B.**

On November 12, 2015, the trial court entered an order on mother's petition. The court made the following findings:

Father has paid his full support obligation in a timely manner each month since the entry of the Final Decree of Divorce.

When Sammy El-Alalyi emancipated, [f]ather continued paying the child support of $3,000[] per month, which was the rate for all three children. Father did not file a Petition to reduce his support.

The negotiated Parenting Plan did not obligate [f]ather to pay for any of the children's college education or related expenses.

Nevertheless, [f]ather has paid all of Sammy El-Alayli's college tuition, fees, books and room & board.

Father also pays Sammy's health insurance and uncovered medical bills voluntarily and without a Court Order to do so.

* * *

The parties have shared Dina's cheerleading expenses. Father recently paid $1,300[] for Dina's cheerleading at Brentwood High School.

* * *

In the Fall of 2015, Maggie will start her second of four years in the Transition Program at Brentwood High School. There is no cost for Maggie attending Brentwood High School in the Transition Program.

* * *

From the time Maggie was 2 years old until she turned 10 years of age, [m]other worked seven days per week at the Son-Rise Program for Autism, in the parties' home. This work made [m]other very qualified to work with Maggie on socialization exercises and communication.

Mother works on a part-time basis as an interpreter. She earned approximately $10,000[] in 2014, with this part-time work.

- 3 -

Jackie Batey has been Maggie's childcare provider since 2008.

* * *

Jackie Batey charges $15[] per hour to care for Maggie. The $809 per month upward deviation that was agreed to at the divorce equates to 53.93 hours of additional care for Maggie each month.

Mother hires Jackie Batey to get Maggie off the school bus every Monday and Wednesday at 2:00 p.m. Then, Jackie keeps Maggie until 6:00 p.m.

On Mondays, Ms. Batey takes Maggie to the Williamson County Recreation Center to participate in a group activity from 4:00 p.m. to 5:30 p.m.

On Wednesdays, Ms. Batey and Maggie may go to Goodwill and shop. . . . She also loves to go shopping at Publix, Target and Kroger and likes to eat at Burger King or McDonald's.

According to Ms. Batey, there is no reason [m]other could not take Maggie to the activities she attends on Monday and Wednesday afternoons.

* * *

Mother is at home without children while Maggie and Dina are in school from 8:00 a.m. to 3:00 p.m.

* * *

Father gets Maggie every Tuesday and Thursday at 3:30 p.m. and keeps Maggie until 7:30 p.m.

* * *

Father has Maggie on alternate weekends from Friday at 3:00 p.m. to Sunday at 6:00 p.m. . . .

* * *

The $809[] upward deviation that [f]ather now pays would cover Ms. Batey's current care on Mondays and Wednesdays from 2:00 p.m. to 6:00 p.m. each week and nine (9) hours[1] of care on those alternate weekends that [m]other does not have Maggie for the weekend.

* * *

Other than the number of hours Ms. Batey is hired by [m]other, Maggie's expenses have not changed since the time of the divorce.

* * *

Maggie's living expenses are comparable to, or less than, that of most other teenage girls.

Mother does not travel with Maggie because [m]other finds traveling with Maggie too stressful.

* * *

Father is willing and desirous to support Maggie in a reasonable manner, as he has always done, for as long as she needs assistance.

* * *

Ever since the Petition for Modification was filed, [f]ather was agreeable to paying the capped amount of support, plus an upward deviation for some caregiver hours for Maggie. The reason [f]ather did not do so during the pendency of this action is simply because [f]ather was not told to do so by his attorney.

(Paragraph numbering in original omitted.)

---

[1] The upward deviation would actually provide for Ms. Batey's care on each Monday and Wednesday from 2:00 p.m. to 6:00 p.m. each week and 10.96 hours of care on the weekends that mother has Maggie.

**C.**

The trial court determined that the final divorce decree incorporated the parties' agreement that father would pay child support in the amount of $3,000 per month, which includes an upward deviation in the amount of $809 per month. Accordingly, the court concluded that, "[a]lthough [m]other filed a pleading entitled 'Motion to Set,' she is actually asking the Court to modify an already existing Order for child support." Because the court treated the motion as a petition to modify, the court found that the rules governing modification of child support set forth in the Tennessee Child Support Guidelines apply. *See* Tenn. Comp. R. & Regs. 1240-12-04.05. The court found that

> [T]o prevail, [m]other must show a 15% change between the amount of current support - $2,191[] – and the amount of the proposed presumptive support Order. Mother has not specifically alleged in her Petition that there has been a 15% change between the amount of the current support and the amount of the proposed presumptive support. Instead, as grounds for her request for a modification, [m]other has alleged in her Petition that there have been material changes in circumstances. These material changes in circumstances, according to [m]other, are: 1) the emancipation of the parties' oldest child, Sammy; 2) the increase in the [f]ather's income; and 3) Maggie's disability. The only one of these allegations that would qualify as an appropriate ground[] on which to grant the modification is the "increase in [f]ather's income." The Court will construe this allegation to be a claim that there has been a 15% change.

> *        *        *

> [T]he Presumptive Child Support Order is $3,349.27. There is a 15% Variance. Pursuant to Section 1240-2-4-.07[(2)](g), the maximum child Support obligation for two children is $3,200. . . . Father agrees, and has agreed throughout the recent litigation, that he is obligated to pay $3,200 per month for Dina and Maggie. Therefore, the Court finds [f]ather is obligated for and shall pay child support in the amount of $3,200 per month.

> To obtain more than this $3,200 per month, [m]other "must prove, by a preponderance of the evidence, that more than this is reasonably necessary to provide for the needs of the child." At the time of the divorce, [f]ather agreed to pay a

- 6 -

deviation in the amount of $809 per month for Maggie's caretaker. Father continues to pay that amount. Mother cannot show by a preponderance of the evidence, that support in excess of this $4,009[] per month is necessary to provide for the children. Accordingly, [f]ather is not obligated to pay more than the $4,009 he has already agreed to pay.

**D.**

The court found that the day before the hearing on mother's petition, mother filed a "Notice of Request of Relief Sought." In the pleading, [m]other requested different relief from what she requested in her original "Petition to Modify Child Support." The court noted that, while the petition to modify was based upon material changes in circumstances, the subsequent pleading

requested an upward deviation in the Guidelines on the basis of specific needs of the children and not as an income driven adjustment. Prior to this late filing, [m]other had not asked for an upward deviation. Instead, [m]other asked only for the Court to shift [f]ather into a higher income bracket under the worksheet. . . . [She] did not mention anything about a need for additional money in order to provide for the needs of the children nor did she mention specific needs of the children, such as Dina's cheerleading expenses.

Accordingly, the trial court treated the notice as a motion for relief.

Treating mother's pleading as a motion, the court found that "[p]ursuant to Rule 5.03 of the Local Rules of Practice for the 21st Judicial District, all motions 'must be filed and served by personal delivery at least fourteen (14) days prior to the date set for the hearing on the motion.' " Additionally, the court cited to Tennessee Rule of Civil Procedure 6.04 requiring motions to be served no later than five days prior to a hearing on the motion. The court found that, because mother filed the notice of request of relief sought the day before the hearing, "[f]ather did not have proper Notice of the Relief Sought in the late-filed pleading." Accordingly, the court asserted that it "respectfully declines to consider the pleading captioned 'Notice of Request of Relief Sought' filed on May 17, 2015, one day before the Hearing on the mother's Petition to Modify."

The court noted that even if the pleading was timely filed, mother would not be entitled to relief. With respect to mother's request for support for Maggie, the court found the following:

The calculation of the basic child support obligation under the

- 7 -

Guidelines contemplates all the expenses that were included in the itemized list of Maggie's expenses in the Notice of Relief Sought with the exception of the expense for Maggie's caregiver hours. At the time of the divorce, [f]ather agreed to pay an upward deviation of $809 per month to cover Maggie's additional needs, especially caregiver hours. Father continues to agree to the upward deviation and this Court ordered [f]ather to continue to pay this deviation.

Moreover, additional caregiver hours for Maggie are a voluntary expense of [m]other and are not reasonably necessary for Maggie's care. Sending Ms. Batey on trips with Maggie, as opposed to traveling with Maggie herself, is an example. Also, allowing Ms. Batey to have Maggie every Monday and Wednesday afternoon and most of every other weekend is another example. Jackie Batey testified that there was nothing she did on Monday and Wednesday afternoons that [m]other could not do herself. Thus, the Court finds [m]other has not shown, by a preponderance of the evidence, that additional support in excess of the amount provided by the applicable percentage is reasonably necessary to provide for the needs of the child.

In denying mother's request for Dina's cheerleading expenses, the court found that

[t]he cheerleading expense of $150[] per month requested by [m]other is an expense requested in addition to the basic child support obligation and is properly characterized as a "special expense" under the guidelines. Because the cheerleading expense of $150[] per month is a "special expense" under the Guidelines, it would need to equal or exceed seven percent (7%) of the basic child support obligation ("BCSO") in order to be considered an additional expense not contemplated within the BCSO. The cheerleading expense clearly does not exceed 7% of the BCSO; therefore, this expense should not be added to the child support as it is contemplated within the existing child support calculations.

(Internal citations omitted.)

In regard to mother's request for father to pay $2,000 into an educational trust for Dina, the court denied her request, stating the following:

- 8 -

The Court finds this request to be one for extraordinary relief and, therefore, it should have been specifically plead[ed] in the Original Petition. Even if [m]other had specifically plead[ed] this [r]equest, she would not have been entitled to relief. . . . To order [f]ather to begin paying money for Dina's college education now, while she is a [s]ophomore in [h]igh [s]chool, would be unreasonable. Also, such a requirement could adversely affect [f]ather's ability to continue paying for Sammy's college education.

\* \* \*

Not only has [m]other failed to show an educational trust is reasonably necessary, [m]other has also failed to specify a duration of time for the requested trust. Payment into a future child support trust fund for an unspecified length of time, presumably for the duration of [f]ather's child support obligation, is not appropriate.

(Internal citation omitted.)

The court also denied mother's request for a special needs trust for Maggie, finding that

The special needs of Maggie were discussed and negotiated at the time of the divorce and the upward deviation was set accordingly. There have been no changes of circumstance regarding Maggie's needs and expenses since the entry of the Final Decree of Divorce. In addition, [f]ather has obtained life insurance for the benefit of the children in the amount of $3,000,000[] even though he was only court-ordered to obtain $1,000,000[] in life insurance. Such action by [f]ather shows his willingness to provide for his children. . . .

A special needs trust in this case is neither just nor required by the Guidelines. Father's child support obligation, plus additional upward deviation, will meet the needs of the child.

The court found that $4009 per month would appropriately provide for the children's standard of living:

Father has agreed to pay the capped amount of child support,

$3,200[], plus the additional $809 per month as additional support, for a total of $4,009[] per month, in addition to alimony of $3,000 per month and to Samm[y]'s college expenses. These payments to [m]other are sufficient, not only in light of the needs of the children but also in regard to the goal of the Guidelines, which is to "[e]nsure that, when parents live separately, the economic impact on the child is minimized, and, to the extent that either parent enjoys a higher standard of living, the child shares in that higher standard. . . ."

Mother could better her standard of living for Maggie, Dina and herself by working and earning more.

The court found that mother was not the successful party in this litigation, noting that father had agreed to pay an increased amount of child support in the amount of $4,009 per month. Accordingly, the court found that mother was not entitled to an award of attorney's fees. Mother appeals.

## II.

On appeal, mother raises the following issues, as taken verbatim from her brief:

The trial court erred in setting the amount of child support[;]

The trial court erred in denying that an educational trust be established and funded for the benefit of the minor child, Dina El-Alayli[;]

The trial court erred in denying that a trust be set up and funded for the benefit of the adult disabled child, Maggie El-Alayli[;]

The trial court erred in not making the modification of child support retroactive to the date [mother] filed her petition to set child support[;]

The trial court erred in imputing income to [mother;]

The trial court erred in treating the notice of relief sought filed by [mother] as a motion for relief[;]

The trial court erred in denying [mother] an award of her

attorney fees at the trial court[;]

[Mother] seeks an award of her attorney fees on appeal[.]

(Paragraph numbering in original omitted.)

## III.

In this non-jury case, we review the trial court's findings of fact upon the record with a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister,* 414 S.W.3d 685, 692 (Tenn. 2013). We review a trial court's conclusions of law under a de novo standard with no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

We have stated the following regarding our standard of review for setting child support:

> Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child . . . support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). . . . However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).
>
> \*    \*    \*
>
> Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. . . . [A] trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

IV.

A.

Mother asserts that the trial court erred in awarding child support in the amount of $4,009 per month. She argues that "[t]he finding of the trial court in setting child support in the amount of . . . $4,009[] . . . per month deprives Maggie and Dina El-Alayli of their right to enjoy the standard of living commensurate with [father's] means and station of life." She concludes that "[t]he trial court abused its discretion in this matter because the application of the guidelines would be unjust or inappropriate in order to provide for the best interest of the child(ren)." We disagree.

The record is clear that the trial court calculated and set child support in accordance with the child support guidelines. The trial court exercised its discretion in finding that mother had not proven by a preponderance of the evidence that more than the capped amount of support plus an upward deviation is reasonably necessary to support the children. The evidence does not preponderate otherwise.

In her notice of request of relief, mother requests total support of $5,642 per month for Dina and Maggie. In her request for Maggie, mother includes specific requests for a spending allowance, a camp, food, utilities, vacation, and housing. Each of these expenses is contemplated by the child support guidelines and included in the basic child support obligation (BCSO). The child support guidelines specifically state that, of the amount included in the BCSO, "[t]he bulk of these child-rearing expenses is comprised of housing, food, and transportation." Tenn. Comp. R. & Reg. Ch. 1240-02-04-.03(b)(4). The BCSO also includes "expenditures devoted to clothing and entertainment . . . ." **Id.** Thus, the guidelines contemplate mother's specific requests for amounts in excess of the BCSO. Mother has not shown that additional support for these amounts is reasonably necessary.

Mother also requests $150 per month for Dina's cheerleading. The child support guidelines provide for "[s]pecial expenses [that] include, but are not limited to, summer camp, music or art lessons, travel, school-sponsored extra-curricular activities, such as bands, clubs, and athletics, and other activities intended to enhance the athletic, social or cultural development of a child that do not otherwise qualify as mandated expenses like health insurance premiums and work-related childcare costs." Tenn. Comp. R. & Reg. Ch. 1240-02-04-.03(b)(6)(i). We find that mother's request for cheerleading expenses is contemplated by this section of the child support guidelines. Dina's cheerleading at her high school is a school-sponsored extracurricular activity and fits into this category. The child support guidelines provide that these special expenses "may be added . . . as a deviation when this category of expenses exceeds seven percent (7)% of the monthly

- 12 -

[BCSO]." Here, because the BCSO is $3,200, special expenses must exceed $224 per month. The $150 per month for cheerleading clearly does not meet the requirements to be added as a deviation as a special expense.

Mother asserts that the trial court erred when it ruled that she "was willfully and voluntarily under-employed and imputing income to her." She concludes that, "[b]ecause the trial court erred in imputing income to [her] by not following the guidelines, the basis for computing child support cannot be supported by the record." We are not persuaded by her argument. As previously noted by us, the statutory limit on the amount of child support for two children is $3,200. Tenn. Comp. R. & Reg. Ch. 1240-02-04-.07(g)(1)(ii). The trial court set child support at the capped amount of $3,200. In addition to the capped amount, the court awarded an upward deviation of $809 to provide for Maggie's care. Imputing income to [m]other had no effect on the child support award. The trial court found that mother has the ability to earn $2,500 per month. Whether the trial court found that mother made $0 per month or $2,500 per month, the trial court awarded the capped amount of child support. Accordingly, even if imputing income to mother was an error by the trial court, it is harmless error.

For mother to be awarded an amount in addition to the capped amount, she "must prove by a preponderance of the evidence that more than this amount is reasonably necessary to provide for the needs of the child." Tenn. Comp. R. & Reg. Ch. 1240-02-04-.07(g)(1). "The amount of child support required by the guidelines is presumptively correct." *Anderton v. Anderton*, 988 S.W.2d 675, 681 (Tenn. Ct. App. 1998). In this case, the trial court ordered father to continue paying the upward deviation in the amount of $809. We discern no error in this holding. Mother has failed to demonstrate that an additional amount is reasonably necessary to provide for the children's needs.

Mother requests additional amounts for Maggie but has failed to show how they are *reasonably necessary* to provide for her needs. As noted above, most of the expenses that mother requests are already contemplated by the child support guidelines and included in the BCSO. Mother asks for $1,553 for a special education teacher for Maggie, but she has failed to prove by a preponderance of the evidence that this amount is reasonably necessary. The record before us demonstrates that there are many hours when mother is utilizing a special education teacher but could herself care for Maggie during those times. Mother has not demonstrated the need for a number of additional hours. We hold that the trial court did not abuse its discretion in setting child support pursuant to the child support guidelines.

**B.**

**i.**

Mother challenges the trial court's order refusing to establish an educational trust

for Dina and a special needs trust for Maggie. She argues that, given father's substantial income, the trusts are appropriate. With regard to the educational trust for Dina, mother asserts the following:

> This Court should ensure Dina El-Alayli's college education, as the Guidelines contemplate, and require an educational trust be funded in the amount requested, beginning in May, 2015 or an amount equal to the projected cost of a University of Tennessee undergraduate education, including tuition and fees, books and supplies, room and board, living expenses and incidentals for Dina El-Alayli. It is certainly in [her] best interest to do so.

We find no abuse of discretion by the trial court in denying mother's request for an educational trust for Dina. Mother asserts that "the child support guidelines specifically contemplate an educational trust." Mother quotes Tenn. Comp. R. & Reg. Ch. 1240-02-04-.07(2)(g)(2)(iii), which states that "[t]he court may require that sums paid pursuant to this subparagraph be placed in an educational or other trust fund for the benefit of the child." Subsection (ii) of this subparagraph, however, provides that, "[i]f the [primary residential parent] proves the need for support in excess of the amount provided for in part 1, the tribunal shall add an appropriate amount . . . as a deviation." Thus, for money to be paid into an educational trust, mother must first prove the need for a deviation to fund the trust. Our Supreme Court has stated the following with regard to the need for establishing child support trusts:

> When a non-custodial parent has shown normal parental concern for a child, a trust fund may be unnecessary to ensure that his . . . feelings are reflected in spending. However, when a non-custodial parent shows a lack of care, the court may step in and require the parent to support his or her child. The establishment of a trust is simply one discretionary mechanism used in the endeavor.

*Nash v. Mulle*, 846 S.W.2d 803, 807-808 (Tenn. 1993).

It is clear that a parent requesting a trust must prove that there is a need for establishing the trust. We find that the trial court did not abuse its discretion when it found that mother had failed to show that an educational trust is reasonably necessary. Mother failed to explain the reasoning for $2,000 per month and failed to specify a duration for the trust. She has failed to provide support for the assertion that an educational trust is reasonably necessary. Father is currently paying for Sammy's college, and there is no evidence that he would fail to do the same for Dina. The Supreme Court has found that a trust may be unnecessary when the parent has shown

- 14 -

"normal parental concern for a child." *Id.* In this case, father has shown parental concern for the children and has demonstrated his willingness to support his children. An educational trust is unnecessary. We hold, as a matter of law, that the trial court did not abuse its discretion in denying mother's request for an educational trust for Dina.

## ii.

In regard to the special needs trust for Maggie, mother asserts that "[t]he guidelines specifically provide that a court may require that sums be placed in an educational or other trust fund for the benefit of the child." She concludes that "[a] special needs trust or 'other trust fund for the benefit of the child' is in Maggie's best interest to provide for her needs pursuant to the child support guidelines."

As previously stated, father has shown his intent to provide for his children. He has shown his concern for Maggie by agreeing to pay an upward deviation for her care. Additionally, he has taken out life insurance in excess of what the court ordered him to obtain. Mother has not proven that a special needs trust is reasonably necessary, and father has demonstrated that he is willing to provide for Maggie. We find that the evidence does not demonstrate that a special needs trust for Maggie is reasonably necessary. We hold that the trial court did not abuse its discretion in denying the request for a special needs trust for Maggie.

## C.

Mother argues that "[t]he [t]rial [c]ourt should have awarded [her] an amount of child support that should have been paid between the date of filing the Petition to Set Support and the entry of the Memorandum and Order." To support her position, mother asserts that "[father's] income had increased dramatically well before [she] filed her petition to set child support[, and] the trial court gave no reason for not making the child support retroactive." In her brief, she asserts that she requested retroactive child support and that the trial court made no ruling on her request. Accordingly, she concludes that the trial court abused its discretion in failing to award retroactive child support.

Mother's argument is not persuasive. Mother did not, in fact, request retroactive child support. In her untimely notice of request of relief sought, mother asserts that there is an "arrearage to date of filing [of] $2,642[] per month X 13 = $34,346 . . . ." Mother does not specifically state how the arrearage accrued but seems to arrive at the monthly arrearage of $2,642 by deducting the amount that father has been paying of $3,000 from the amount she requested of $5,642. This, however, is not an arrearage. Father did not owe an additional $2,642 per month, but continued to pay the amount he was ordered by the court to pay. Nowhere in mother's petition to set child support or in her notice of request of relief did mother request retroactive child support. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or argument for him or

- 15 -

her . . . ." ***Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.***, 301 S.W.3d 603, 614 (Tenn. 2010). The trial court specifically found that "[f]ather has paid his full child support obligation in a timely manner each month since the entry of the Final Decree of Divorce." Mother is not entitled to a child support arrearage because one did not accrue. While mother asserts that the trial court erred by not making the child support retroactive, this was not an abuse of the trial court's discretion.

The statute governing child support modifications provides the following:

> [A] judgment [for child support] shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.

Tenn. Code Ann. § 39-5-101(f)(1). Thus, the statute provides the boundary for the earliest that a modification may take effect. We have explained that

> The statute permits the modification of child support retroactively to the time the action for modification was filed. This provision makes sense in that it removes any incentive an obligor parent might otherwise have in delaying litigation and resolution, in an attempt to keep his or her child support payment lower for as long as possible.

***McCosh v. McCosh***, No. E2014-01702-COA-R3-CV, 2015 WL 512077, at *8 (Tenn. Ct. App., filed August 31, 2015).

The statute also provides the default date that a modification takes effect. Tenn. Code Ann. § 39-5-101(g)(5)(D)(iv) provides the following: "The support order shall be modified as established by the court . . . , as required pursuant to the child support guidelines. . . . If the modified payment is higher than the payment amount required prior to the modification, then the obligor shall pay the higher ordered amount from the date of entry of the order." Thus, unless the court orders that a child support modification takes effect on an alternate date, the modification takes effect on the date of the judgment. In regard to making child support retroactive, "[w]e leave decisions as to the date on which a new child support amount is effective to the sound discretion of the trial court." ***Stack v. Stack***, No. M2014-02439-COA-R3-CV, 2016 WL 4186839, at *13 (Tenn. Ct. App., filed Aug. 4, 2016). The trial court, in its order, chose not to make the new support amount effective as of an earlier date.

We find that this was not an abuse of discretion by the trial court. In this case, mother did not ask for a retroactive child support award. Prior to and since mother filed

the petition to set support, father has paid child support for three children even though Sammy has reached majority. Father did not seek to reduce the support amount when Sammy reached majority and has also paid his college expenses. Father has not delayed this litigation in an effort to lower his child support obligation and has always supported and provided for the children. We hold that the trial court did not abuse its discretion in failing to make the child support modification retroactive.

**D.**

In her brief, mother argues that the trial court erred in ruling that her notice of request of relief was untimely. She argues that her petition "asked that child support be set pursuant to the guidelines and if the guidelines were not to be used by the court in setting support for Maggie, then that support be set for Maggie." She concludes that her notice of request of relief does not request relief outside her original petition and that it "does not contemplate any request not sought under the child support guidelines."

We find that mother's notice of request of relief filed one business day before the hearing on her petition to set child support was untimely. Mother's initial petition to set child support requested a hearing to set child support pursuant to the child support guidelines. Her notice of request of relief, however, does not simply request child support. In addition to child support, she asked for a number of specific expenses for Maggie, money to be put into an educational trust, money to be put into a special needs trust, and life insurance on father's life. Her notice of relief clearly requests additional relief from the basic child support she requested in her petition to set child support.

We find that the trial court did not err when it treated mother's "notice of request of relief" as a motion. Mother's initial petition to set child support asked the court to "set child support pursuant to the Tennessee Child Support Guidelines for the remaining minor child and that the Court set child support for the parties' adult disabled child." This request was based upon father's increase in income, the fact that Sammy had attained majority, and the fact that Maggie had attained majority and still requires support due to her disability. In her notice of request of relief, mother asked for an upward deviation for Dina, support for Maggie based on specific needs, an educational trust, and a special needs trust. Mother did not simply ask for child support based on the guidelines to be calculated based upon father's increase in income. She asked for specific upward deviations.

Local Rule of Practice for the 21st Judicial District 5.03 provides that all motions "must be filed and served by personal delivery at least fourteen (14) days prior to the date set for the hearing on the motion." Mother clearly did not timely file her document asking the court for specific child support amounts the day before the hearing to set child support. Accordingly, father did not have proper notice of mother's requests. As discussed above, even considering the merits of mother's requests, she is not entitled to

relief. We hold that the trial court did not err in treating mother's notice of request of relief as a motion that asked the court for relief not sought in her initial petition.

**E.**

Mother claims that she prevailed on her petition to set support and that, accordingly, she should have been awarded her attorney's fees by the trial court. She asserts that "[b]ut for [her] proceeding to trial, [father] would not have paid the increased child support." She claims that she "prevailed on her Petition to Set Support." We are not persuaded by her argument.

Father has demonstrated that he is able and willing to support his children. Father has timely made his child support payments. Additionally, he has gone above what is required by also paying for Sammy's college and has maintained insurance on his life in excess of what the court ordered him to obtain. In the parties' initial child support agreement, father agreed to pay the capped amount and also agreed to pay an upward deviation. The facts demonstrate that father is willing to cooperate and pay to support his children. In addition to setting child support under the guidelines, mother asked the court for a number of upward deviations. She asked the court for a total of $5,642 in support plus an additional $4,000 to be put into trusts for Dina and Maggie. While mother requested a total of $9,642 per month for the support of the children, the court ordered support in the amount of $4,009 per month. Mother clearly did not prevail in this case. The trial court set support based on the guidelines and set an upward deviation that the parties agreed to in their permanent parenting plan. The trial court did not err in denying mother's request for attorney's fees. Additionally, mother has not prevailed on this appeal and is not entitled to her attorney's fees on appeal.

**V.**

The judgment of the trial court is affirmed. The costs on appeal are assessed to the appellant, Ola Halim. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE